**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Theresa Ann Lee, | No. CV-13-00759-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W Colvin, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Theresa Ann Lee seeks judicial review of the Commissioner's decision finding her not disabled. Doc. 21. For the reasons that follow, the Court will deny Plaintiff's request for relief.[1]

**I.    Background.**

Plaintiff was 30 years old on the date that her alleged disability began. She has a GED and has worked as a receptionist and data entry clerk. Plaintiff alleges disability due to autonomic disorder and orthostatic hypotension. Doc. 21 at 4-5.

Plaintiff filed an application for disability insurance benefits on June 10, 2009. Tr. 19. She also filed an application for supplemental security income on June 10, 2009. *Id*. Plaintiff alleged disability beginning on October 21, 2008, in both applications. *Id*. After a hearing on April 5, 2011, an Administrative Law Judge ("ALJ") issued an opinion

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

on July 22, 2011, finding Plaintiff not disabled. *Id*. Plaintiff's request for review was denied by the Appeals Council and the ALJ's opinion became the Commissioner's final decision. Tr. 3.

**II.     Analysis.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Plaintiff alleges that the ALJ committed legal error in three ways. First, she argues that the ALJ failed to properly weigh the opinion of a treating physician. Second, she argues that the ALJ improperly discounted her subjective testimony concerning the intensity, persistence, and limiting effects of her symptoms. Finally, she contends that the ALJ erred in assessing her RFC. Because a vocational expert testified that the limitations outlined in the treating physician's assessment and Plaintiff's own testimony would preclude sustained work, Plaintiff urges the Court to remand for a computation of benefits. The Court will consider each argument in turn.

**A.     Plaintiff's Subjective Testimony.**

In August 2009, Plaintiff completed a questionnaire about her daily activities, which involved caring for three young children, cooking, shopping, and driving. Tr. 220-31. In March 2010, Plaintiff completed a second questionnaire about her daily activities which reported that she had daily in-home support for her children, that meals were prepared by "support staff," and that housework was performed by her children or by support staff. She asserted that she had no hobbies and engaged in practically no social activities, and that she spent the entire day on her couch or in bed. Tr. 244-52. At the hearing before the ALJ, Plaintiff testified that she left her job as a receptionist and data entry clerk in October 2008 because she had spent "two out of five days at the hospital and was not able to work." Tr. 45. She was unable to find a new job or complete an employment training class because she was wearing a holter monitor "and the cardiac stuff was out of control." Tr. 49. She testified that she was unable to work because of near-syncopal episodes that occur "three days a week or so" and that these episodes

1  prevent her from leaving the house because she becomes fatigued. Tr. 48. She claimed
2  to be bedridden on average for two days each week. Tr. 61. She testified that she could
3  not do seated work because she might experience syncope when standing up from her
4  seated position. Tr. 50-51.

5  The ALJ must engage in a two-step analysis to evaluate the credibility of a
6  claimant's subjective testimony. "First, the ALJ must determine whether the claimant
7  has presented objective medical evidence of an underlying impairment 'which could
8  reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v.*
9  *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341,
10 344 (9th Cir. 1991) (en banc)). If the claimant meets this first test, and there is no
11 evidence of malingering, then the ALJ "can reject the claimant's testimony about the
12 severity of her symptoms only by offering specific, clear and convincing reasons for
13 doing so." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may consider
14 the following factors: the claimant's reputation for truthfulness, inconsistencies either in
15 the claimant's testimony or between her testimony and her conduct, the claimant's daily
16 activities, her work record, and testimony from physicians and third parties concerning
17 the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v.*
18 *Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119
19 F.3d 789, 792 (9th Cir. 1997)).

20 At the first step, the ALJ found that "the claimant's medically determinable
21 impairment could reasonably be expected to cause the alleged symptoms[.]" Tr. 24. At
22 step two, however, the ALJ concluded that the claimant's statements concerning the
23 intensity, persistence and limiting effects of these symptoms were not credible. *Id*. The
24 ALJ relied on seven reasons discussed below to buttress his step-two conclusion. *See* 20
25 C.F.R. § 404.1529(c)(4) (ALJ must consider conflicts between a claimant's statements
26 and signs and laboratory findings); *Carmickle v. Comm'r Soc. Sec. Admin.*, 553 F.3d
27 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis
28 for rejecting the claimant's subjective testimony") (citation omitted).

1        First, the ALJ noted that there is little objective evidence to support the severity of 2   the claimant's allegedly disabling conditions.  The ALJ cited medical notes stating that 3   "multiple testing in [the] past has failed to uncover [Plaintiff's] constellation of 4   symptoms."  Tr. 24, 420.  Further, on August 12, 2009, Plaintiff's treating provider noted 5   that Plaintiff had reported multiple symptoms, but significant work-up for connective 6   tissue disorder and neurological work-up were negative.  Tr. 429.

7        Second, in addition to the lack of objective medical evidence to support the 8   claimant's alleged disabling complaints, the ALJ noted that physical examinations of the 9   Plaintiff were normal and she generally had no neurological deficits.  The ALJ cited to 10  eight exhibits in the record in support of this finding.  Tr. 25.

11       Third, the ALJ juxtaposed Plaintiff's subjective testimony that she was frequently 12  bed-bound by disabling symptoms with evidence in the medical record that her 13  headaches, syncope, and dizziness improved with treatment and that she could relieve her 14  symptoms by standing up slowly.  Tr. 25, 28, 602, 626, 740, 758.

15       Fourth, the ALJ concluded that Plaintiff's testimony about her limitations was not 16  consistent with her daily activities.  Plaintiff's daily activities included caring for three 17  young children, driving her children to and from school, cooking, cleaning, shopping for 18  groceries, attending women's meetings, participating in "personal growth activities," and 19  dancing with her AA group.  Tr. 22, 25-26, 257, 567, 690, 717; *see Berry v. Astrue*, 622 20  F.3d 1228, 1234-35 (9th Cir. 2010) (finding that ALJ may rely on inconsistencies in daily 21  activities and alleged disability).  The ALJ also noted that Plaintiff had engaged in 22  physical labor a few days before the administrative hearing.  Tr. 22, 26, 27-28, 792.

23       Fifth, the ALJ noted that Plaintiff cares for three young children almost 24  exclusively on her own, including one child with special needs.  The ALJ concluded that 25  Plaintiff's ability to perform the demanding tasks associated with caring for these 26  children is inconsistent with her complaints of disabling symptoms.  Tr. 26.

27       Sixth, the ALJ challenged Plaintiff's credibility by highlighting her inconsistent 28  statements made to medical providers regarding her use of cigarettes, alcohol, and illegal

drugs. Tr. 26. For example, Plaintiff denied smoking or having a history of illegal drug use during her first examination with Dr. Cunningham (Tr. 560), but she admitted during other medical appointments that she was a smoker (Tr. 543, 620, 627, 833, 848, 865, 888) and a former methamphetamine user (Tr. 560, 887). Tr. 26; *see Thomas*, 278 F.3d at 959 (affirming ALJ's finding that claimant lacked candor which carried over to description of physical pain where claimant made inconsistent statements regarding her drug use). In addition, Plaintiff consistently reported that she cannot sit because she is dizzy and will faint when she stands up, but was able to quickly get off the table, stand up, and walk with a normal gait during her consultative examination. Tr. 560.

Seventh, the ALJ relied on his own observations of Plaintiff at the administrative hearing. The ALJ observed that Plaintiff appeared to be a "very healthy young woman" who displayed no discomfort or pain. Tr. 26. The ALJ also noted that his impressions of Plaintiff's demeanor and appearance at the administrative hearing were confirmed by Dr. Cunningham at a consultative examination after the hearing. Tr. 26, 888.

Plaintiff argues that the ALJ made "a medical judgment, which the ALJ was not qualified to make," when he weighed and interpreted the medical evidence and concluded that it undermined Plaintiff's subjective testimony. Doc. 21 at 19; *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (rejecting ALJ's RFC assessment where there was no medical evidence to support the ALJ's finding). The cases cited by Plaintiff are inapposite. Although it is true that an ALJ cannot make findings that are wholly unsupported by medical evidence, the ALJ made no such findings in this case. He simply resolved inconsistencies in the record. As the factfinder in this case, the ALJ is required to resolve conflicts in the record and find the relevant facts. *See* 42 U.S.C. § 405(g).

Plaintiff argues that the evidence cited by the ALJ to undermine Plaintiff's subjective testimony does not establish that she was symptom-free. Doc. 21 at 20. But Plaintiff need not be symptom-free in order for the Court to affirm the ALJ's finding of no disability. In fact, the ALJ found that Plaintiff did suffer from syncope and its accompanying symptoms, but also that Plaintiff's "statements concerning the intensity,

persistence and limiting effects of [her] symptoms are not credible." Tr. 24. Thus, the ALJ need not present specific, clear and convincing reasons that Plaintiff suffered from no symptoms of syncope. He is required to present specific, clear and convincing reasons to undermine her credibility, which he did.

Plaintiff asserts that "the evidence the ALJ recited, in support of his belief that the severity of [Plaintiff's] symptoms was belied by objective medical evidence, had nothing to do with her primary disabling symptoms related to autonomic disorder." Doc. 21 at 19-20. This assertion is incorrect. Although the ALJ cited to evidence relating to other symptoms and disorders claimed by Plaintiff, he also cited to evidence that relates directly to symptoms stemming from Plaintiff's autonomic disorder. Tr. 24-25.

**B.    RFC Assessment.**

Plaintiff argues that the ALJ's decision is "uncoupled with any articulated rationale for the determination of [Plaintiff's] residual functional capacity" and that the ALJ impermissibly relied on his own opinion as evidence. Doc 21 at 23. The Court does not agree. No medical source opinion or witness testimony was conclusive as to the RFC assessment. The ALJ was required to resolve conflicts in the record and make a finding regarding Plaintiff's ability to work. 42 U.S.C. § 405(g); 20 C.F.R. § 404.1545(a)(1); *Richardson v. Perales*, 402 U.S. 389, 399 (1971). Plaintiff argues that the ALJ erred because he "did not explain *how* the evidence supported the rated capacities." Doc. 21 at 23. Plaintiff effectively asserts that a function-by-function description is required to substantiate the RFC. *Id.*; *see* SSR 96-8p. Plaintiff's interpretation of SSR 96-8p is incorrect. "SSR 96-8p requires only that the ALJ discuss how evidence supports the residual capacity assessment and explain how the ALJ resolved material inconsistencies or ambiguities in the evidence[.]" *Mason v. Comm'r of Soc. Sec.*, 379 F.App'x 638, 639 (9th Cir. 2010).

In support of the RFC assessment, the ALJ discussed a wide range of medical evidence and witness testimony. Tr. 24-28. The ALJ identified which medical opinions were compelling and accorded them great weight in formulating the RFC. He also

identified medical opinions that were less compelling, explained why they were less compelling, and accorded them little weight. The ALJ provided ample explanations as to how the medical evidence supported his RFC assessment and how he resolved inconsistencies in the evidence. *Id*. The ALJ summarized his findings by stating that the Plaintiff "does have restrictions due to her physical conditions, however, she is not as limited as she alleged." *Id*. at 28.

The Court concludes that the ALJ's RFC assessment meets the burden imposed by SSR 96-8p and is supported by substantial evidence.

### C. Treating Physician Opinion.

Plaintiff's primary attack on the ALJ's decision focuses on the weight given to a medical opinion by Dr. Shukla. Tr. 28. Dr. Shukla treated Plaintiff from April 2009 through March 2011. *Id*. 679, 758. In June 2009, Dr. Shukla completed a check-the-box form opining that Plaintiff was "unable to work [at] this time" and "temporarily unemployable." Tr. 465, 467. On February 25, 2010, Dr. Shukla completed another check-the-box form opining that Plaintiff had significant physical limitations attributable to chest pain, palpitations, weakness, fatigue, shortness of breath, nausea, dizziness, and syncope. Tr. 731-32. He further opined that Plaintiff's physical symptoms would cause significant emotional difficulties and that Plaintiff constantly experienced symptoms severe enough to interfere with her attention and concentration. Tr. 732. Dr. Shukla based his responses to the second form on objective findings that included "tilt table testing," a holter monitor test, and an electrophysiology study. Tr. 731. The vocational expert testified that the limitations assessed by Dr. Shukla would preclude sustained work. Tr. 70-71.

The ALJ accorded Dr. Shukla's opinion little weight. Tr. 28. The ALJ found that Dr. Shukla's opinion was not consistent with the "longitudinal medical evidence of record," including Dr. Shukla's own treatment records which state that Plaintiff's supraventricular tachycardia was treated with an ablation and there were no new episodes of chest pain, shortness of breath, dizziness, or syncope. *Id*. The ALJ found that Dr.

Shukla's opinion was inconsistent with his indication that the claimant could participate in an exercise program, and that Dr. Shukla's opinion was not consistent with Plaintiff's activities of daily living. *Id.*

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). The opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons if it is not contradicted by another doctor's opinion. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

The opinion of Dr. Shukla was contradicted by the opinion of Dr. Cunningham, an examining physician, who opined that Plaintiff had abilities consistent with light work. Tr. 890-97. The ALJ therefore could discount Dr. Shukla's opinion for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. The Court finds that the ALJ gave three specific and legitimate reasons for discounting the opinion of Dr. Shukla.[2]

First, the ALJ cited inconsistencies between Dr. Shukla's medical opinion and his own treatment notes, with specific citations to the record. Tr. 28. Dr. Shukla's medical notes indicate that Plaintiff did not have a recurrence of supraventricular tachycardia after

---

[2] The ALJ's blanket reference to "the longitudinal medical evidence of record" is not specific and therefore falls short of the "specific and legitimate reasons" standard of *Embrey* and *Lester*.

- 8 -

the ablation procedure, and that her symptoms of dizziness associated with syncope had ameliorated and were "fairly tolerable" with medication. Tr. 740, 758.

Second, the ALJ cited Dr. Shukla's own recommendation that Plaintiff participate in an exercise program. Tr. 28. Dr. Shukla's notes do contain repeated assertions that Plaintiff could participate in an exercise program. Tr. 684, 687, 691, 695, 737, 742, 773, 881.

Another reason the ALJ cited to support his conclusion that Dr. Shukla's own treatment records are inconsistent with Dr. Shukla's medical opinion was that Dr. Shukla's treatment records indicate that Plaintiff's condition had been treated with an ablation and there had been no recurrence and there were no new episodes of chest pain, shortness of breath, dizziness or syncope. Tr. 28. Plaintiff argues that the ALJ's statement indicates the ALJ failed to read Dr. Shukla's comments in the context of the overall record. Doc. 21 at 12; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) ("[A treating physician's] statements must be read in context of the overall diagnostic picture he draws"). In support of her argument, Plaintiff has provided many instances before and after Dr. Shukla's opinion in which Plaintiff reported chest pain, shortness of breath, dizziness, and syncope. Doc. 21 at 12. The Court agrees with Plaintiff that the ALJ overstated the significance of Dr. Shukla's notation that no new episodes of the symptoms occurred.

Third, the ALJ noted that Plaintiff participated in a volunteer project in which she hauled rocks in the Salt River bed ten days before her hearing in this case. Tr. 28. Plaintiff injured her hand at the volunteer project, but when she presented to receive treatment for her injured hand, her vitals were stable and she did not complain of chest pain, shortness of breath, dizziness, or syncope. Tr. 792-93.

These reasons are specific, and the Court finds them to be legitimate because they are grounded in the record. The Court also finds that they are supported by substantial evidence, which is "more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d at 882.

The Court's substantial evidence conclusion, which requires the Court to consider the record as a whole, *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998), is supported by other medical evidence that conflicted with Dr. Shukla's opinion and that was discussed by the ALJ. For example, the treatment notes of Drs. Leahy and Hsu indicated that Plaintiff's symptoms of dizziness and syncope improved with medication and that Plaintiff could further relieve symptoms of syncope by standing up more slowly. Tr. 602. The record also included the report of a tilt table test, which indicated that Plaintiff was able to sit and stand without any drop in her blood pressure or heart rate. Tr. 628, 739. The medical evidence of record also included the medical notes of Dr. Finch, a psychological consultative examiner who opined that Plaintiff had no impairment in sustained concentration. Tr. 567-69.

In summary, the Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Shukla's opinion, and that the reasons are supported by substantial evidence.

**IT IS ORDERED:**

1. Plaintiff's brief (Doc. 21) is **denied**.

2. The Clerk is directed to enter Judgment and terminate this action.

Dated this 23rd day of January, 2014.

David G. Campbell
United States District Judge